```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

MICHELE PERKINS,                )
                                )
        Plaintiff,              )
                                )
    v.                          )    Case No. 2:23-cv-393
                                )
NEW ENGLAND COLLEGE and         )
WAYNE F. LESPERANCE, JR.,       )
                                )
        Defendants.             )
```

## OPINION AND ORDER

Plaintiff Michele Perkins brings this diversity action against New England College and Wayne F. Lesperance, Jr. ("Defendants") claiming gender-based discrimination, intentional infliction of emotional distress, and unlawful removal from her position as a trustee of New England College ("NEC"). Pending before the Court is Defendants' motion to stay, in which they argue that Perkins' employment contract with NEC requires the case to go to arbitration on all claims. Perkins opposes the motion. For the reasons set forth below, the motion to stay is **granted**.

## Factual Background

NEC is a college in Henniker, New Hampshire. The Amended Complaint alleges that Perkins served as President of NEC from 2007 to 2022. In 2022, she voluntarily stepped down from that position, as well as her post as Chief Executive Officer of NEC,

and transitioned to the newly-created position of NEC Chancellor.  She served as Chancellor from September 2022 through early April 2023.  She also served on the NEC Board of Trustees, with her most recent three-year term to extend through June 30, 2025.

Perkins held her position as Chancellor pursuant to an Employment Agreement that took effect on September 1, 2022, and was to extend for a period of one year.  The Agreement provided that Perkins' employment as Chancellor was at-will and could be terminated at any time with or without cause.  The Agreement also noted Perkins' position on the Board of Trustees:

> Separate and apart from Dr. Perkins['] position as Chancellor of the College, the parties recognize and agree that Dr. Perkins has agreed to serve as a member of the College's Board of Trustees ....  This board position is independent from Dr. Perkins' employment as the Chancellor pursuant to this Agreement and is unpaid.

ECF No. 7-2 at 8.

Perkins alleges that on April 4, 2023, she was invited to a zoom meeting with Defendant Wayne Lesperance, then NEC President, and others.  In the course of that meeting, Lesperance "announced [Perkins] was fired and that 'it's just not working out.'"  ECF No. 5 at 11.  Perkins contends that "[n]o substantive reason was given for the bizarre decision to terminate plaintiff."  *Id.*  Lesperance informed her that she would be paid through the end of the Employment Agreement.

2

With respect to Perkins' position on the Board, the Amended Complaint alleges that "Plaintiff was immediately erased from the College website and her name was removed from the list of the trustees on the Board.  Her access to the online Board portal was removed."  *Id.* at 14.  Perkins claims that her "de facto" removal from the Board violated NEC's bylaws.  *Id.* at 11.

The Amended Complaint asserts three causes of action. Count I alleges violation of the Vermont Fair Employment Practices Act, claiming that the decision not to renew Perkins' contract on September 1, 2023 constituted discrimination on the basis of sex.  Count II claims intentional infliction of emotional distress, as Defendants' "plan and scheme to professionally decapitate plaintiff, destroy her legacy and eliminate her presence and influence at NEC as well as the field of higher learning" was allegedly intended to cause Perkins emotional harm.  *Id.* at 13-14.  Count III claims that Perkins was removed from the Board of Trustees, not only violating the NEC bylaws but also depriving her of the ability to remain active in various organizations.  Count III also alleges emotional and reputational harm.  *Id.* at 15-16.

Perkins filed her initial Complaint on September 13, 2023. One week prior, on September 6, 2023, the parties engaged in private mediation.  The mediation was not successful. Defendants contend that pursuant to the Employment Agreement,

3

the dispute must now go to arbitration.  The Employment Agreement states:

> Any controversy between the College and Dr. Perkins involving the construction, application or enforcement of this Agreement, as well as any controversy or claim based upon the alleged breach of any legal right relating to or arising from Dr. Perkins's employment and/or termination of her employment shall, on the written request of either party served on the other, be submitted to binding arbitration before a single arbitrator.

ECF No. 7-2 at 10.  The Employment Agreement requires that, prior to arbitration, the parties attend a mediation session of at least six hours with NEC paying the cost of the mediator.  *Id.*  The parties agree that the private mediation session on September 6, 2023 was shorter than six hours, and that they split the cost of the mediator.  Defendants submit that the parties agreed to split the cost of mediation, and that Perkins ended the mediation "early."  ECF No. 9 at 3.

Defendants report that on September 15, 2023, their counsel sent Perkins a written request to arbitrate the claims set forth in the Amended Complaint.  Perkins did not agree to arbitration.  ECF No. 7-1 at 3.  Defendants now move the Court to stay the case, arguing that the Employment Agreement requires pre-litigation arbitration on all three Counts.  Perkins contends that the Employment Agreement does not apply since the relevant conduct (non-renewal as Chancellor, intentional infliction of

4

emotional distress, and removal as a trustee) occurred after and/or apart from the Employment Agreement.

## Discussion

The Federal Arbitration Act ("FAA") "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (cleaned up).  Section 3 of the FAA allows a district court to stay "the trial of the action until such arbitration has been had in accordance with the terms of the [parties'] agreement." 9 U.S.C. § 3; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) ("The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4.").  The Second Circuit has explained that a stay, rather than dismissal, comports with the FAA's underlying policy of moving an arbitrable dispute to arbitration "as quickly and easily as possible."  *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).

Courts in this Circuit have also held that "[b]ecause federal policy favors arbitration, courts are required to construe arbitration clauses as broadly as possible and resolve any doubts regarding arbitrability in favor of arbitration."

5

*Delahunty v. Morgan Stanley Dean Witter*, 56 F. Supp. 2d 231, 234 (D. Conn. 1999) (citing S.*A. Mineracao Da Trindade-Samitri v. Utah Intern., Inc.*, 745 F.2d 190, 194 (2d Cir. 1984)).  The Second Circuit recently made clear, however, that courts must apply "ordinary principles of contract interpretation" to determine whether "a particular dispute is covered by the [arbitration] language to which the parties agreed," and that a "presumption of arbitrability" is only applied "as a last, rather than first, resort" when the language of the agreement is ambiguous.  *Local Union 97, IBEW v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023).  "The presumption ... is rebuttable and 'simply assists in resolving arbitrability disputes.'"  *Id.* at 113 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010)).

Here, with no dispute as to the validity of the Employment Agreement itself, the Court must determine whether the arbitration provision therein applies to any or all of Perkins' three causes of action.  *See In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (holding that courts must determine whether the parties had a valid agreement to arbitrate, and whether the dispute comes within the scope of that agreement); *see also Dr.'s Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (noting that the general presumption in the Second Circuit is that "threshold questions

6

of arbitrability ... should be resolved by the court and not referred to the arbitrator").

### A. Discriminatory Non-Renewal of the Contract

The Court first considers the claim of discriminatory non-renewal. As noted, Perkins argues that the Employment Agreement expired the day before her non-renewal, and that its arbitration provision therefore does not apply to any post-Agreement conduct. To emphasize this point, Perkins notes that she did not bring a cause of action for breach of contract given that she was paid through the end of the contract's term. Defendants respond that the decision not to renew the contract falls within the arbitration provision as a "controversy . . . arising from Dr. Perkins's employment and/or termination of her employment." ECF No. 7-2 at 10.

The facts alleged in the Amended Complaint center on Perkins' termination in April 2023. Her claim of discriminatory non-renewal relies on the same events that led to her termination. Nothing in the Amended Complaint suggests that any additional discriminatory acts, aside from the non-renewal itself, occurred outside the time period covered by the Employment Agreement. Consequently, there can be no meaningful distinction between Defendants' actions in April 2023, which are plainly arbitrable, and the contract non-renewal one day after

7

the contract expired, as events that "ar[ose] from Dr. Perkins's employment and/or termination." *Id.*

Perkins nonetheless argues that her obligation to arbitrate ended on the last day of the Employment Agreement. The Supreme Court has held that an arbitration provision is presumed to survive the expiration of an agreement unless there is some express or implied evidence that the parties intended to negate that presumption. *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 253 (1977). In *Nolde Brothers*, the Court explained that a "post-expiration grievance can be said to arise under the contract only where [as in this case] it involves facts and occurrences that arose before expiration ...." *Id.*; *see also Lyman v. Greater Bos. Radio, Inc.*, No. 09-14502, 2010 WL 2557831, at *6 (E.D. Mich. June 21, 2010) (collecting cases "for the proposition that an arbitration agreement generally lives on, even when the agreement containing it expires, so that disputes arising out of that agreement remain arbitrable").

Courts have similarly held that an arbitration agreement will extend beyond a term of employment where the claim "involve[s] significant aspects of the employment relationship." *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1167 (8th Cir. 1984); *see also Aspero v. Shearson American Exp., Inc.*, 768 F.2d 106, 109 (6th Cir. 1985) (claims of post-

8

employment defamation, invasion of privacy, and intentional infliction of emotional distress following employee's termination were related to employment period and subject to arbitration). While the parties cite no New Hampshire or Vermont law directly on point, the Second Circuit has endorsed the "significant aspects of the employment relationship" test. *See Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047, 1052 (2d Cir. 1989) (adopting "the test that the Court of Appeals for the Eighth Circuit developed in *Morgan*"). In *Fleck*, the court held that a post-termination tort such as libel or slander by a former employer was "arbitrable because resolution of the claim ... depended on evaluation of the broker's performance during employment." *Id.* This rule applies with particular force in a case where, as here, the broad arbitration language applies to any matter arising out of either employment or termination. *See, e.g., Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) ("With such a broad arbitration clause, it is only necessary that the dispute 'touch' matters covered by the [Agreement] to be arbitrable").

According to the Amended Complaint, the facts giving rise to Perkins' contract non-renewal occurred exclusively within the time period covered by the Employment Agreement. While the act of non-renewal itself may have occurred the day after the Agreement expired, the factual questions underlying the claim

9

will involve a full examination of Perkins' relationship with her employer while employed as Chancellor.  The Court therefore finds that Perkins' non-renewal claim must go to arbitration.

### B. Intentional Infliction of Emotional Distress

This same analysis applies to Perkins' tort claim of intentional infliction of emotional distress.  According to the Amended Complaint, Defendants' "plan and scheme to professionally decapitate plaintiff" took effect at the time of her termination.  ECF No. 5 at 13.  The contract non-renewal flowed from that same "plan and scheme."  Since the actions giving rise to the tort claim occurred within the contract period, that claim must be arbitrated.  *See, e.g., Aspero*, 768 F.2d at 109; *cf. Pearce v. E.F. Hutton Grp., Inc.*, 828 F.2d 826, 832 (D.C. Cir. 1987).

### C. Removal from the Board of Trustees

The third cause of action, claiming improper removal from the Board of Trustees, is distinct from the other two claims.  The Employment Agreement made clear that Perkins' role as a trustee was separate from her position as Chancellor.  Indeed, the Agreement explicitly states that Perkins' position on the Board was "independent" from her "employment as the Chancellor pursuant to this Agreement."  ECF No. 7-3 at 4.  Given a plain reading, that language indicates that Perkins' role as a Board member was not governed by the Employment Agreement.

10

Consequently, none of the substantive provisions in the Agreement, including the arbitration provision, applied to her position on the Board. The Court therefore finds that Perkins cannot be compelled to arbitrate the cause of action relating to her Board removal.

### D. Arbitration with Lesperance

The next issue is whether Perkins must also arbitrate with Lesperance, as Lesperance is a named Defendant but was not a party to the Employment Agreement. The Employment Agreement is not limited to claims against NEC. Furthermore, the Second Circuit has held that

> [u]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship between the parties ... and the issues that had arisen' among them discloses that 'the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'

*Ragone v. Atl. Video*, 595 F.3d 115, 126-27 (2d Cir. 2010) (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)); *see also Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d. Cir. 2008).[1]

---

[1] As noted by one commentator, "[t]he federal courts have initiated and many state courts have recognized and adopted a unique body of 'equitable estoppel' law that is peculiarly applicable to cases in which a nonsignatory to an arbitration agreement ... seeks to compel arbitration of a claim against itself brought by a signatory party to the arbitration agreement.... The doctrine differs from traditional equitable

11

Here, the claims Lesperance "seek[s] to resolve" in arbitration are clearly "intertwined" with those brought against NEC. Moreover, Lesperance's relationship with Perkins, as NEC President and the person who allegedly exercised significant influence over decisions to terminate her employment and non-renew her contract, were such that he may compel arbitration.

### E. The Mediation Requirement

There is also the question of whether a pre-arbitration mediation occurred as contemplated by the Employment Agreement. The Employment Agreement requires non-binding mediation. The parties engaged in such mediation but did not adhere strictly to the terms of the Agreement. The Agreement states that "the fees associated with the mediator shall be borne by the College," and that once a mediator is chosen, "[t]he parties will then proceed to mediation for a minimum of 6 hours." ECF No. 7-2 at 10. The mediation that took place deviated from those terms, as the parties split the cost and adjourned prior to the required six hours.

The Employment Agreement's mediation provision echoes its arbitration provision, requiring mediation for claims that arise

---

estoppel in that it contains no requirement of justifiable reliance, and it has not been accepted by all state courts." Michael A. Rosenhouse, *Application of Equitable Estoppel to Compel Arbitration By or Against Nonsignatory – State* Cases, 22 A.L.R. 6th 387.

from Perkins' employment and/or termination. For the reasons discussed above, mediation is thus required for two of Perkins' three causes of action. The parties may attend a second mediation that fully complies with the requirements of the Employment Agreement, or they may choose to waive additional mediation. In any event, the Court must impose a stay while the parties pursue alternative dispute resolution on Counts I and II.

### F.   The Extent of the Stay

Finally, the Second Circuit has instructed that "if [a] court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008). In deciding whether to stay a case pending arbitration, the "Court must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017). "Discretionary stays are appropriate where there is a substantial amount of factual overlap between arbitrable claims and claims that cannot be arbitrated." *Tessemae's LLC v. Atlantis Cap. LLC*, No. 18-CV-4902 (KHP), 2019 WL 3936964, at *8 (S.D.N.Y. Aug. 20, 2019) (collecting cases).

Here, the Amended Complaint alleges that Perkins' employment and her position on the Board terminated at the same time. Consequently, there appears to be significant overlap in the facts underlying those two events, and such overlap suggests that discovery should occur within a single forum. Developing the factual record in the context of an arbitration proceeding will not prejudice Perkins, as discovery in parallel litigation here would likely be duplicative.

Moreover, since the arbitration may address certain legal issues, parallel litigation could result in inconsistent rulings and run afoul of the doctrine of issue preclusion. *Cf. CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration."); *see also Bear, Stearns & Co. v. 1109580 Ont., Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (observing that an arbitration decision may give rise to collateral estoppel in certain circumstances). Finally, the Court finds that the interests of economy for both the Court and the parties will be served by a complete stay, and that Defendants have met their burden of showing that such a stay is warranted. *See WorldCrisa v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (holding that a district court may issue a stay pursuant to its inherent power to control its docket).

14

## Conclusion

For the reasons set forth above, Defendants' motion to stay (ECF No. 7) is **granted**.

DATED at Burlington, in the District of Vermont, this 3rd day of January, 2024.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge